# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GARY GREEN,**

        **Petitioner,**

**v.**                              **Civil Action No. 1:10cv44**
                                       **(Judge Keeley)**

**KUMA J. DEBOO, Warden,**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

The above styled case is before the undersigned for consideration of the *pro se* petitioner's Application for Habeas Corpus pursuant to 28 U.S.C. § 2241, the government's motion to dismiss or for summary judgment, and the petitioner's cross motion for summary judgment. In the petition, the petitioner challenges a disciplinary proceeding that resulted in the loss of good conduct time.

### I. Petitioner's Disciplinary Proceedings

On February 22, 2009, the petitioner received an incident report charging him with a violation of prohibited act code 222, Making, Possessing or Using Intoxicants. See Resp't Memorandum (dckt.11), Ex. 1 at Att. A. The report states that on February 22, 2009, at approximately 8:45 p.m., the petitioner was found with what appeared to be a bottle of homemade intoxicants. Id. at ¶ 11. The bottle was confiscated and the contents tested positive for alcohol. Id. The petitioner was thereafter tested for alcohol consumption, the results of which were also positive. Id.

On February 23, 2009, staff conducted an investigation into the matter. Id. at ¶ 22-27. At that time, the inmate was advised of his right to remain silent. Id. at ¶ 23-24. The petitioner acknowledged his understanding of that right, was given a copy of the incident report and made the

following statement: "I wish you would have came (sic) an hour later and mabey (sic) I could have beaten this shot. I don't have anything else to say." Id. The petitioner requested no witnesses on his behalf. Id. After completing the investigation, the investigator concluded that the report was true and valid and recommended it be forwarded to the Unit Disciplinary Committee ("UDC"). Id. at ¶ 26.

A UDC hearing was held on February 26, 2009. Id. at ¶ 21. At the hearing, the petitioner neither denied nor admitted the charges and had "no comment." Resp't Ex. 1, Att. B at III.B. Based on the severity and nature of the charges, the UDC referred the charges to a Disciplinary Hearing Officer ("DHO") with a recommendation for sanctions.[1] Resp't Ex. 1, Att. A at ¶ 19.

The petitioner was notified of his DHO hearing on February 26, 2009. Resp't Ex. 1 at Att. D. At that time, the petitioner refused staff representation and waived his right to call witnesses. Id. The petitioner was further informed of his disciplinary hearing rights and acknowledged his receipt and understanding of such rights. Resp't Ex. 1 at Att. E.

The DHO conducted a hearing on March 11, 2009. Resp't Ex. 1, Att. B at I.B. At the hearing, the petitioner stated: "No contest, I was not drinking. My rights were violated. I didn't get a copy of the incident report in 24 hours." Id. at III. B. The DHO considered three staff memos from Senior Correctional Officers stating that they had witnessed the petitioner come down the stairs on February 22, 2009 and lay a bottle on the second landing of the stair case. Id. at III.D. The bottle was retrieved and found to contain a yellowish liquid. Id. The bottle was confiscated and tested. Id. The contents of the bottle tested positive for alcohol, as did the petitioner. Id.

---

[1] The UDC recommended loss of good time, disciplinary segregation – suspended, and loss of commissary. Resp't, Ex. 1, Att. A at ¶ 20.

Based on these memos, the written statement of the reporting officer, the results of the alcohol tests and the petitioner's statements, the DHO found that based on the greater weight of the evidence, the petitioner had committed the prohibited act of making, possessing or using intoxicants. Id. at IV-V. The petitioner was sanctioned 27 days loss of Good Conduct Time, 30 days in disciplinary segregation, 90 days loss of commissary privileges, 90 days loss of telephone privileges and 90 days loss of visiting privileges. Id. at VI-VII. He was also advised of his right to appeal the decision. Id. at VIII.

## II.  Contentions of the Parties

**A.  The Petition**

In the petition, the petitioner acknowledges that on or about February 22, 2009, he received a code 222 incident report for making, possessing or using intoxicants. Petition (dckt 1), Att. 1 at 1. He asserts that pursuant to 28 C.F.R. § 451.11, staff had 24 hours from the time of incident to provide him with a copy of incident report. Id. The petitioner asserts that the alleged incident was reported at 8:45 p.m. but that he did not receive a copy of the report until 9:45 the next day. Id. The petitioner concedes that the incident report states that it was delivered to him at 8:45 the next day, but alleges that this information is incorrect. Id. He further asserts that he has been refused a copy of the video tape from the time of the alleged delivery of the report and that the video tape was subsequently purged in an attempt to cover-up the violation of his rights. Id. at 1-2.

Next, the petitioner asserts that other inmates who have had incident reports delivered past the 24-hour time limitation have had their incident reports thrown out. Id. The petitioner asserts that such conduct shows favoritism, preferential treatment or discrimination in violation of the Bureau of Prisons Policy Statement ("PS") 3420.09 and 1040.04. Id.

3

**B.   The Respondent's Motion to Dismiss or for Summary Judgment**

In the motion, the respondent asserts that the petition should be dismissed, or judgment granted in her favor, because

(1) the petitioner was afforded all rights due him in his disciplinary proceedings;

(2) the DHO's finding was sufficient to support the charge; and

(3) the petitioner had no liberty interest in receiving the incident report within 24 hours.

**C.   The Petitioner's Motion for Summary Judgment**

In his cross-motion for summary judgment, the petitioner asserts that "there is still a dispute present in these proceedings that has yet to be addressed by Respondent, thus we have a 'legal conclusion' that has yet to be answered nor (sic) addressed." Motion (dckt. 14) at 2. The petitioner asserts that the respondent has failed to address the crux of his argument -- employee misconduct, discrimination and favoritism. Id. He further asserts that these very serious claims were unanswered and unaddressed in the respondent's motion, even though the respondent knew these issues were presented by the petitioner. Id. The petitioner asserts that because the respondent failed to address these claims, they are undisputed and he is entitled to summary judgment. Id. at 2-3. He also asserts that he has been hindered in these proceedings and prevented from presenting a fair defense. Id. at 3.

### III.   Standard of Review

**A.   Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded

complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.  Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at

248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

IV. Analysis

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States. § 4042(a)(3) (emphasis added). Therefore, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, et seq.

Prison disciplinary proceedings are not a part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). However, inmates are entitled to some due process protections. Id. Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. Id. On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. Id at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 117 S.Ct. 1584 (1985).

In this case, it is clear that the petitioner received all of the due process to which he was

entitled under Wolff and that there was "some evidence" to support the DHO's finding of guilt. The petitioner does not assert otherwise. Instead, the heart of the petitioner's claim is that the Bureau of Prisons failed to follow its own policies and regulations during the course of his disciplinary proceedings. Specifically, the petitioner asserts that his due process rights were violated when he did not receive a copy of the disciplinary report within 24 hours. However, the petitioner misapprehends the relevant policies and regulations regarding receipt of the report.

28 C.F.R. § 541.15(a) states that the BOP must give an inmate a copy of an incident report "*ordinarily* within twenty four hours of the time staff became aware of the inmate's involvement in the incident." (Emphasis added). This language is not mandatory and does not create a liberty interest in receiving the incident report within a certain period of time. See Smith v. Bureau of Prisons, 2004 WL 3397938 *5 (W.D.Va. Oct. 22, 2004) (an inmate has no liberty interest under Wolff, or under BOP regulations, in receiving an incident report within a certain period of time after an alleged event occurs); see also Kentucky v. Dept. of Corr. v. Thompson, 490 U.S. 454, 462-463 (1989) (regulations must contain "explicitly mandatory language" to create a liberty interest). Therefore, the petitioner cannot establish that a violation of his constitutional rights occurred, assuming he did not receive the incident report within 24 hours as he alleges.

In fact, there is simply no evidence that the petitioner received the incident report outside of the 24-hour time limitation. Staff first became aware of the alleged violation at 8:45 p.m. on February 22, 2009. Resp't Ex. 1, Att. A at ¶ 11. According to the incident report, the petitioner received a copy of the report at 8:45 p.m. the very next day. Id. at ¶ 14-16. Thus, the record reflects that the petitioner received the incident report within 24 hours. Nonetheless, the petitioner asserts that he actually received the report at 9:45 p.m. on February 23, 2010 -- one hour late -- and that the

8

incident report has either been tampered with or is inaccurate. Petition (dckt. 1), Att. 1 at 1.

A careful review of the incident report fails to elicit any proof that the report was tampered with. Indeed, except for his own self-serving and conclusory statements, the petitioner provides no evidence to support his contention that the report was tampered with or that it is inaccurate. Even if he had, and the Court concluded that the petitioner received the incident report at 9:45 p.m., the petitioner fails to explain how he suffered any actual prejudice from receiving the report one hour past the 24-hour time limitation. Accordingly, this claim is without merit.

Next, the petitioner asserts that he was not treated the same as other similarly situated inmates. Specifically, he alleges that inmate David Coker received incident reports on February 12, 2009 for violations of codes 312 and 404. Petition (dckt. 1), Att. 1 at 2. The petitioner further asserts that the incident reports were delivered to inmate Coker 13 minutes passed the 24-hour time limitation found in 28 C.F.R. § 541.15(a) and were dismissed for the failure to receive a copy of the report within 24 hours. Id. The petitioner asserts that the difference between his case and inmate Coker's violates BOP program statements 3420.09(9)(c)(1) and 1040.04, regarding favoritism, preferential treatment and discrimination. Id. However, the failure to adhere to policy statements does not *per se* give rise to a violation of constitutional dimension. See Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993); see also Ghag v. Smith, 2007 WL 2385070 *4 (E.D.Cal. Aug. 17, 2007) (program statements that only provide guidelines to use when making administrative decisions do not carry the force and effect of law and any violation thereof is not a violation federal law).

Program Statement 3420.09 sets the standards for employee conduct. See P.S. 3420.09(1). Section 9(c)(1) specifically states that employees "may not show favoritism or give preferential treatment to one inmate, or a group of inmates, over another." This section does not affect the

9

Bureau's discretion in making administrative decisions. Thus, it does not have the force and effect of law, and even if the petitioner had shown favoritism or preferential treatment, which he has not,[2] a violation of this policy provision does not give rise to a right to relief in federal court.

Program Statement 1040.04 simply states that "Bureau staff shall not discriminate against inmates on the basis of race, religion, national origin, sex, disability, or political belief. This includes the making of administrative decisions and providing access to work, housing and programs." PS 1040.04(1). In addition, "[t]he expected result of this program is: Assignment in housing, work and programs will be available to inmates on an equal opportunity basis." PS 1040.04(2). Thus, to the extent that this section even applies to disciplinary proceedings, the plaintiff is alleging an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. To be successful on an equal protection claim, a petitioner must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If he makes such a showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.

Here, the petitioner has failed to show that he was treated differently from others with whom he was similarly situated or that his treatment was a result of intentional or purposeful discrimination. In addition, he has failed to show that he is a member of suspect class. Thus, the

---

[2]Except for his own self-serving and conclusory statements, the petitioner has provided no evidence to substantiate his claim that inmate Coker received preferential or favored treatment.

petitioner fails to state an equal protection claim.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss or For Summary Judgment (dckt. 10) be **GRANTED**, the petitioner's cross Motion for Summary Judgment (dckt. 14) be **DENIED**, and the petitioner's § 2241 petition (dckt. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt, to his last known address on the docket, and to counsel of record via electronic means.

DATED: June 3, 2010.

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE